UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ALAINA TINGLE-DUNCIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00167-TWP-KMB |
| | ) |
| JEFFERSON COUNTY SHERIFF'S DEPARTMENT, and ADVANCED CORRECTIONAL HEALTHCARE, INC. | ) ) ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Motions for Summary Judgment filed by Defendant Jefferson County Sheriff's Department ("the Sheriff") ([Filing No. 16](#)) and Advanced Correctional Healthcare, Inc. ("ACH") ([Filing No. 17](#)) (collectively, "the Defendants"). Plaintiff Alaina Tingle-Duncil ("Ms. Tingle-Duncil") suffered a miscarriage while incarcerated in the Jefferson County Jail (the "Jail") and required medical attention. She filed this civil rights action under 42 U.S.C. § 1983 and supplemental state tort claims pertaining to her medical care and the disposition of her fetus' remains. Defendants seek summary judgment arguing that the action should be dismissed because Ms. Tingle-Duncil did not exhaust her administrative remedies. Because there are genuine disputes of material fact regarding the availability of the grievance process, the motions for summary judgment, are **denied**.

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely

disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.   BACKGROUND

### A.   Allegations in Complaint

According to Ms. Tingle-Duncil's Complaint[1], when she entered the Jail on August 9, 2021, she was approximately 9 weeks pregnant. On September 28, 2021, she learned from Jail medical staff that her baby had died and had likely been deceased for three weeks. (Filing No. 1 at 3.)

On October 1, 2021, Ms. Tingle-Duncil was provided four different medications intended to induce a miscarriage and was then sent back to her cellblock. *Id*. Before the procedure, she received no information regarding her right to determine the final disposition of the remains of the aborted or the disposition policy of the health care facility concerning the disposition of the aborted fetus, as required by Indiana Codes §§ 16-34-3 and 23-14-54. Nor was she provided the

---

[1] Which Ms. Tingle-Duncil titled "Amended Complaint".

2

opportunity to view the fetal ultrasound imaging as required by Indiana Code § 16-34-2-1.1, or given certain advisements about follow-up care or warnings about potential side effects as required by Indiana law. *Id*. at 4. Ms. Tingle-Duncil was not provided "the name of the physician performing the abortion, the physician's medical license number, and an emergency telephone number where the physician or the physician's designee may be contacted on a twenty-four (24) hour a day, seven (7) day a week basis," as required by Indiana law. *Id*.

Within an hour of returning to her cell, Ms. Tingle-Duncil began experiencing severe abdominal pain and hemorrhaging. She became too weak to shower or eat. She requested assistance from Jail staff, who ignored her. Ms. Tingle-Duncil remained in the cellblock for five days where she experienced continued medical complications and was cared for by fellow inmates because Jail and medical staff ignored her requests for help. *Id*. at 5.

Six days after she took the medication, she was taken to an area hospital where she was diagnosed with an incomplete abortion and received two units of blood. *Id*.

**B.      Grievance Procedure at the Jail**

The Jail's inmate grievance procedures are found in the Jefferson County Correctional Facility Inmate Handbook (the "Handbook"). (Filing No. 16-3 at 16-18.) The Handbook states, "A grievance is a complaint and must pertain to a rule or procedure, including a complaint of oppression or misconduct by an employee in administering such rules." (Filing No. 16-3 at 16.)

A section titled "Inmate Grievance" explains the process. *Id.* at 17. It begins by explaining that informal grievances can be communicated to an officer verbally, and if the issue is resolved informally, no written grievance is required. *Id*. If the issue is not resolved informally, a formal grievance must be submitted via the kiosk within seven days of the event or knowledge of the event being grieved. *Id*. The grievance is then forwarded to the appropriate staff member. *Id*.

The inmate can view the response by viewing it on the kiosk (or receiving the response in writing if no kiosk is available). *Id.* An inmate can appeal an unsatisfactory response by writing the Major or Jail Commander within five days of the response. *Id.* Subsequent appeals must be addressed to the Sheriff within five days of the previous response. *Id.* at 18. The appeal must be in writing and include a copy of the previous response. *Id.* Further, there is a separate section for grievances directed to ACH, which states:

> **ADAVANCE [sic] CORRECTIONAL HEALTHCARE SERVICES GRIEVANCES**
> - All attempts will be made to resolve inmate complaints on an informal basis with medical personnel.
> - Other complaints will be reviewed and responded to within seven (7) days.

*Id.* at 17.

C. **Ms. Tingle-Duncil's Use of the Grievance Process**

Jail Commander Joseph Snell reviewed Ms. Tingle-Duncil's inmate records and found one grievance. (Filing No. 16-2 at ¶ 9.) This grievance, dated October 3, 2021, was on a form titled "Jefferson County Jail Medical Grievance Form" and stated, "[I] want to give my mother Yvonne Zdonkewicez p[er]mission to get my med[ica]l records [p]lease[.]" (Filing No. 16-4 at 2.) A nurse responded two days later that "Pt advised during flu visit that we cannot release records to family members or discuss treatment unless they have POA." *Id.*

D. **Disputes of Fact**

Commander Snell attested that based on his experience as jail commander and his review of inmate records, Ms. Tingle-Duncil received a copy of the Handbook. (Filing No. 16-2 at ¶ 7.)

Ms. Tingle-Duncil was shown a copy of the Handbook when preparing her response to the motions for summary judgment. (Filing No. 20-1 at ¶ 2.) She attests that, "At no time was that document reviewed with me nor was I provided a copy of it while I was incarcerated in the

4

Jefferson County Jail." *Id.* Although Ms. Tingle-Duncil submitted a grievance about the medical records, she "was not advised that [her] grievance rights extended to events [at] the jail and medical providers not following Indiana law regarding what they were supposed to have in order to perform procedures, like the one [she] was forced to experience." *Id.* at ¶ 3. Ms. Tingle-Duncil also attests that during the time she was sick in the Jail, she "was so physically weak and in pain and mentally exhausted" that she physically could not have submitted a grievance, even if she had been aware of the grievance policy. *Id.* at ¶ 11.

In reply, Defendants submitted the affidavit of Richard Pryor, the Records Custodian for Combined Public Communications. (Filing No. 22-1 at ¶¶ 1, 4.) Combined Public Communications keeps and maintains records for the Jefferson County Sheriff's Office, including "records flowing from Jail inmates acknowledging receipt of the Jefferson County Correctional Facility Inmate Handbook." *Id.* at ¶ 5. According to those records, Ms. Tingle-Duncil acknowledged receipt of the Handbook on August 14, 2021, September 28, 2021, October 28, 2021, December 2, 2021, January 3, 2022, and December 7, 2023. *Id.* at ¶ 6. He attached the following record to his affidavit:

| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 12/07/2023 |
| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 01/03/2022 |
| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 12/02/2021 |
| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 10/28/2021 |
| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 09/28/2021 |
| 30779 | DUNCIL | MARIE | ALAINA | Released | inmate_handbook | agree | 08/14/2021 |

*Id.* at ¶ 8.

There is no explanation from any of the parties as to what form this acknowledgement takes or when.

### III. DISCUSSION

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524−25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

While a prisoner "must exhaust available remedies," she "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Exhaustion is an

6

affirmative defense, and the defendant bears the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before she filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Ramirez v. Young*, 906 F.3d 530, 534 (7th Cir. 2018).

"If a remedy is 'officially on the books' but the remedy is incapable of use *in practice*, perhaps because the prison's grievance processes have not been maintained or are unduly difficult to navigate, then the duty to exhaust falls away." *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022). Further, where a dispute involves ambiguous policy language, the ambiguity is resolved in favor of the inmate. *Id.* at 782.

Here, there are material questions of fact related to the availability of the grievance process. First, a grievance process may be unavailable if prison personnel fail to inform inmates about the process. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("[P]rison officials must inform the prisoner about the grievance process. The prison cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability.") (cleaned up). Defendants argue that Ms. Tingle-Duncil had access to the grievance process because (1) she filed a grievance requesting a copy of her medical records; (2) inmates receive a copy of the Handbook upon booking; and (3) a printout of a database shows Ms. Tingle-Duncil confirmed receipt of the Handbook on six occasions.

As it relates to Ms. Tingle-Duncil's sole grievance, it was simply a request for medical records rather than a complaint. Further, the printout submitted by record keeper Richard Pryor is ambiguous and was presented with no context whatsoever. Does it indicate that Ms. Tingle-Duncil received six copies of the Handbook? Ms. Tingle-Duncil has at least raised an issue of fact on this point, affirming that she never saw a copy of the Handbook before preparing the response to

Defendants' motion. Defendants have not met their burden that Ms. Tingle-Duncil was informed of the grievance process.

Moreover, there is an ambiguity in the policy. Both Defendants' memoranda state that an inmate must submit a grievance within seven days of the relevant event. (*See generally*, Filing No. 16-1 at 2; Filing No. 18 at 2.) But the policy also states that if an issue is resolved informally, "then the grievance does not need to be submitted formally." (Filing No. 16-3 at 17.) At some point during Ms. Tingle-Duncil's five days of medical discomfort, she or other inmates complained enough that she was taken to the hospital—did that resolve the issue?

Finally, Ms. Tingle-Duncil's contention that she was too ill to comply with the grievance process was not adequately addressed by Defendants. *See Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017) (noting that an inmate suffering a mental breakdown would not be required to exhaust because such remedies are unavailable "if the prisoner can't obtain or complete the forms required to invoke them."). Although she submitted a medical grievance form to ACH requesting her medical records on October 3, 2021 (after her miscarriage was induced), there is no evidence in the record as to how this form was submitted, and whether it would be submitted in the same manner as a grievance directed to Jail staff, given that the grievance policy presents separate tracks for grieving Jail staff and grieving ACH staff.

In summary, there are disputes of material fact with respect to whether the grievance process was unavailable, either because Ms. Tingle-Duncil was not informed about the process or because she was too sick to file a grievance. There is also a possibility that Ms. Tingle-Duncil's grievance was resolved informally, obviating the need for her to file a written grievance, when she

was taken to the hospital.[2]  Accordingly, the Defendants' Motions for Summary Judgment must be **denied.**

## IV.   CONCLUSION

For the reasons explained above, Defendant Jefferson County Sheriff's Department's Motion for Summary Judgment, Filing No. 16, is **DENIED,** and Defendant Advanced Correctional Healthcare, Inc.'s Motion for Summary Judgment, Filing No. 17, is **DENIED**.  Defendants **shall have through Tuesday, June 25, 2024**, by which to (a) withdraw their affirmative defense of exhaustion, or (b) request a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[3]

**SO ORDERED.**

Date: 6/4/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Clayton Culotta
CULOTTA & CULOTTA LLP
clay@culottalaw.com

Justin M. Schaefer
BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

Patrick Muldoon
BARNES MALONEY PLLC
pmuldoon@sbmkylaw.com

---

[2] As it relates to her state law claims concerning the disposition of her fetus' remains, the Court observes that those are state law claims rather than federal claims, so it is unclear that the PLRA would apply to them.

[3] In *Pavey*, the Seventh Circuit instructed district courts to conduct a hearing when "exhaustion is contested" to determine whether a plaintiff has exhausted his administrative remedies.

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Travis W. Montgomery
BLEEKE DILLON CRANDALL, P.C.
travis@bleekedilloncrandall.com